IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Michael F. Schulze and Gerardo Gonzalez,<br><br>           Plaintiffs,<br><br>vs.<br><br>Dwight C. Ratley, et al.,<br><br>           Defendants. | Civil Action No. 6:11-cv-00941-JFA-KFM<br><br>**REPORT OF MAGISTRATE JUDGE** |

This matter is before the court on the defendants' motion to dismiss or, in the alternative, for summary judgment (doc. 62) pursuant to Federal Rules of Civil Procedure 12(b)(1) and 56. The plaintiffs, federal prisoners proceeding *pro se*, seek relief pursuant to *Bivens v. Six Unknown Named Agents,* 403 U.S. 388 (1971).[1] Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(e) DSC, this magistrate judge is authorized to review all pretrial matters involving *pro se* litigants and submit findings and recommendations to the District Court.

Plaintiffs Michael F. Schulze and Gerardo Herrera Gonzalez are federal prisoners serving lengthy sentences for drug crimes. Schulze is housed at the Federal Correctional Institution ("FCI") in Estill, South Carolina. Gonzalez is currently incarcerated at FCI Allenwood in White Deer, Pennsylvania. Both were incarcerated at FCI Bennettsville in South Carolina when the acts alleged in their complaint took place.

---

[1] In *Bivens*, the Supreme Court established a cause of action against federal officials for the violation of federal constitutional rights. A *Bivens* claim is analogous to a claim under 42 U.S.C. § 1983. *Harlow v. Fitzgerald*, 457 U.S. 800, 814–20 (1982). Case law involving § 1983 claims is applicable in *Bivens* actions and vice versa. *Id*. See also *Osabutey v. Welch*, 857 F.2d 220, 221–23 (4th Cir.1988).

The individual defendants were employed at FCI Bennettsville at all times relevant to this action. They are Senior Officer Specialists Ratley and Davis, Captain Del Re, Lieutenants Edwards and Major, Cook Supervisor Simmons, Unit Manager Comstock, Counselor Anderson, and Warden Drew. The plaintiffs also name as a defendant the Federal Bureau of Prisons ("BOP"). On February 8, 2012, Schulze filed a motion to amend/correct (doc. 60), requesting dismissal of defendants Anderson and Comstock from the complaint. It is recommended that the motion be granted.

On February 17, 2012, the defendants filed a motion to dismiss or, in the alternative, for summary judgment. By order filed on February 21, 2012, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiffs were advised of the summary dismissal procedure and the possible consequences if they failed to adequately respond to the motion. A response in opposition to the motion was filed on April 18, 2012 (doc. 80). Only the plaintiff Schulze signed the response to the motion for summary judgment. In an order filed on April 10, 2012, the court reminded the plaintiffs that Schulze could not file on plaintiff Gonzalez' behalf. The defendants filed a reply to the response in opposition on April 20, 2012 (doc. 81).

**FACTS PRESENTED**

At 3:30 p.m. on July 12, 2008, an inmate uprising took place on the recreation yard at FCI Bennettsville. The plaintiffs allege they were on the yard at 2:00 when other inmates forced them with threats to remain there for the 3:30 uprising, and they and other "innocent inmates" were unfairly rounded up with those responsible for the disturbance (amended comp. at ¶¶ 20-22). The plaintiffs allege that the staff received advance notice of this inmate demonstration and could have taken preventative action; however, the defendants submit that the "scant" information they received was that something would happen on the yard at 3:30 and that some of the prisoners arriving on the yard at 3:00 would be the instigators (*see* Del Re decl. ¶ 3). In an effort to thwart the plan, the 3:00 prisoner

2

move was cancelled (Del Re decl. ¶ 5).  At approximately 3:30, staff allowed inmates on the yard an opportunity to return to their cells (*id*.).  However, approximately 136 inmates ran to another area of the yard, refusing to leave (*id*. ¶ 6). The yard was locked down until later that evening, when the FCI Bennettsville Disturbance Control Team entered the yard and escorted the inmates to the Special Housing Unit ("SHU") without any further incident (*id*.).

The plaintiffs were each afforded disciplinary hearings and were found to be in violation of Engaging in Encouraging a Group Demonstration (amended comp. ¶¶ 28-29, 40). Schulze attempted to administratively appeal, but claims his appeal forms were improperly rejected (amended comp. ¶¶ 30-39).   Gonzalez failed to pursue any administrative remedies (Lathrop decl. ¶ 7).  As a result of their violations, they were each sanctioned with loss of good time credits and privileges; placed in the SHU for approximately five months, allegedly without nutritious food and hygiene; and subject to transfer to another FCI.

Upon their release from the SHU on December 5, 2008, the plaintiffs and other inmates were loaded into a van and transported to other FCIs around the state.  The first stop was FCI-Williamsburg, then FCI-Edgefield, and then finally FCI-Estill.  The plaintiffs were onboard until FCI-Estill, a trip they claim took 12 hours (amended comp. ¶ 52).  The plaintiffs complain that transporting Officers Ratley and Davis exposed them to cruel and painful conditions during this transfer: their restraints were too tight; they were denied access to a toilet; and, they were exposed to second-hand cigarette smoke.  They further claim that various actions by the defendants were the result of discrimination and retaliation.

Plaintiff Schulze pursued and exhausted his administrative remedies for his claims arising from his van transfer, but Gonzalez did not (Lathrop decl. ¶¶ 6-7).  The plaintiffs seek actual and punitive damages, as well as declaratory and injunctive relief.

## APPLICABLE LAW AND ANALYSIS

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment:  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment

3

as a matter of law." Fed.R.Civ.P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the the the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248.

***Subject Matter Jurisdiction***

The plaintiffs bring this action under *Bivens*. The court notes that *Bivens* claims are not actionable against the United States, federal agencies, or public officials acting in their official capacities. *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). Accordingly, the plaintiffs' *Bivens* claims against the defendants in their official capacities should be dismissed for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure

12(b)(1). Likewise, the BOP as a federal agency cannot be subject to a *Bivens* claim and should therefore be dismissed.

### *Alien Tort Claims Act*

Plaintiff Schulze is a citizen of Canada, and plaintiff Gonzalez is a citizen of Mexico (amended comp. ¶¶ 17-18), and both invoke 28 U.S.C. § 1350, the Alien Tort Claims Act ("ATCA"), as a jurisdictional basis for their action. The ATCA provides as follows: "The district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." 28 U.S.C. § 1350. The ATCA does not create a statutory cause of action, but rather confers jurisdiction for district courts to hear suits for violations of substantive international law. *See Sosa v. Alvarez-Machain*, 542 U.S. 692, 713-14 (2004). Pursuant to the ATCA, federal courts may "hear claims in a very limited category defined by the law of nations and recognized at common law." *Id*. at 712.

The plaintiffs have failed to make any allegations whatsoever as to which "law of nations" or treaty of the United States specifically would pertain to their claims, as required by the ATCA as a basis for jurisdiction. Regardless, even if the alleged conduct by any of the defendants here could be described as tortious, it certainly did not rise to the level of international concern. Accordingly, the plaintiffs lack jurisdiction to proceed under the ATCA.

### *Failure to Exhaust*

The defendant argues that Plaintiff Gonzalez' claims should be dismissed because he failed to exhaust his administrative remedies. This court agrees. The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (codified as amended at 42 U.S.C. § 1997e(a) (1996)), mandates, among other things, that prisoners exhaust their administrative remedies prior to filing civil actions concerning prison conditions. *See Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."). Exhaustion is required for "all action[s] ... brought with respect to prison conditions, whether under § 1983

or any other Federal law." *Porter v. Nussle*, 534 U.S. 516, 524 (2002) (internal quotations omitted). "[T]he PLRA's exhaustion requirement is mandatory," *Anderson v. XYZ Corr. Health Services, Inc.*, 407 F.3d 674, 677 (4th Cir. 2005), and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter,* 534 U.S. at 532. No unexhausted claims may be considered by the court; such claims must be dismissed. *Jones*, 549 U.S. at 211.

The BOP has a three-tiered administrative grievance process. *See* 28 C.F.R. §§ 542.10 *et seq*. An inmate may complain about any aspect of his confinement by first seeking to informally resolve the complaint at the institution level. *Id.* § 542.13. If the matter cannot be resolved informally, the inmate may file a formal written complaint to the warden. *Id.* § 542.14. The matter will be investigated, and a written response provided to the inmate. *Id*. If dissatisfied with the response, the inmate may appeal to the Regional Director. *Id.* § 542.15(a). If dissatisfied with the regional response, the inmate may appeal to the General Counsel. *Id*. Appeal to the General Counsel is the final level of agency review. *Id.* § 542.15(a).

BOP records reveal that plaintiff Schulze has exhausted his remedies available under the formal Administrative Remedy procedure established by the BOP concerning the allegations in his complaint (Lathrop decl. ¶ 6). However, plaintiff Gonzalez has not exhausted his administrative remedies (*id*. ¶ 7). Because plaintiff Gonzalez has not exhausted his remedies in this suit, his claims against the defendants should be dismissed.

***Discrimination and Retaliation***

The plaintiffs allege throughout their amended complaint that the defendants' actions were motivated by discrimination and in retaliation for the plaintiffs' involvement in the recreation yard uprising.

The Equal Protection Clause "is essentially a directive that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). To show their equal protection rights were violated, the plaintiffs must

demonstrate that they were treated differently from similarly situated inmates, and the discrimination was intentional or purposeful. *Williams v. Hansen*, 326 F.3d 569 (4th Cir. 2003). If the discrimination was based on a plaintiff's membership in a suspect class, the differential treatment must be narrowly tailored to a compelling interest; otherwise, a plaintiff must show that the discrimination did not bear a rational relationship to a legitimate governmental purpose or was not reasonably related to a legitimate penological interest. *See Cleburne*, 473 U.S. at 440-42; *Turner v. Safley*, 482 U.S. 78, 89-90 (1987); *Beard v. Banks*, 548 U.S. 521, 532 (2006).

In order to state a plausible retaliation claim, a complaint must contain more than "bare assertions of retaliation." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). Claims of retaliation by inmates are generally treated with skepticism because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct." *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996).

The plaintiffs have failed to state a viable claim of discrimination or retaliation. As for discrimination, they fail to provide any plausible evidence that the alleged treatment was based on impermissible considerations such as race, color, religion, national origin, gender, age, or other illegally discriminatory basis. Moreover, plaintiffs have failed to allege any specific facts supporting their claims of retaliation. The plaintiffs seem to allege that the sanctions imposed upon them for participating in the uprising were illegally retaliatory, but these bare conclusory allegations are insufficient to maintain a constitutional action for retaliation. The sanctions here came after disciplinary hearings afforded to both plaintiffs, and such responsive action and discipline is obviously not the type of illegal retaliatory action prohibited by the Eighth Amendment. Accordingly, these Equal Protection claims are baseless.

### *Eighth Amendment Claims*

#### *1. Failure to Protect*

The plaintiffs contend that, despite having advance knowledge, defendants Del Re and Edwards took no action to protect them from being swept up in the uprising,

7

exposing them to a "substantial risk of harm" (amended comp. ¶ 68). The Eighth Amendment imposes a duty on prison officials "to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). However, not "every injury suffered by one prisoner at the hands of another ... translates into constitutional liability for prison officials responsible for the victim's safety." *Id*. at 834. To establish an Eighth Amendment claim for failure to protect, a prisoner must show, first, that he was incarcerated under conditions posing a substantial risk of serious harm, and second, that prison officials acted with deliberate indifference. *Id*. "Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement." *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir.2003). "[T]o demonstrate such an extreme deprivation, a prisoner must allege a serious or significant physical or emotional injury resulting from the challenged conditions or demonstrate a substantial risk of such serious harm resulting from the prisoner's exposure to the challenged conditions." *Id*. (internal citation and quotation marks omitted). A prisoner must also prove that prison officials had a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834. To do so, he must establish that prison officials knew of and disregarded "the objectively serious condition, medical need, or risk of harm." *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir.1995).

Taking their allegations as true, the plaintiffs have failed to meet the required threshold for a failure to protect claim. With the scant advance information that a disturbance might happen, the officers took action to prevent or minimize it by canceling the movement of those prisoners they believed would be responsible. They also allowed inmates already on the yard an opportunity to leave, which the plaintiffs obviously did not do (Del Re decl. ¶¶ 5-6). The court also notes, and the plaintiffs admit in their complaint, that they themselves received advance information of the uprising while on the yard, yet they failed to report it to prison authorities or leave the yard (amended comp. ¶¶ 20-21). In any event, the prison officials took action they hoped would quell the uprising, and in doing so, successfully safeguarded all the inmates, including the plaintiffs, as the uprising ended

peacefully. As such, the defendants cannot be found to have acted with the requisite deliberate indifference. Moreover, the plaintiffs have made no showing that they suffered a serious physical or emotional injury during the uprising or in its aftermath, nor have they demonstrated a substantial risk of such serious harm; their allegations show only that they were purportedly threatened by other inmates. Having failed to set forth allegations sufficient to maintain a constitutional action, the plaintiffs' failure to protect claim should be dismissed.

### *2. Conditions of Confinement*

The plaintiffs allege they were denied adequate food and hygiene while housed in the SHU, and that the conditions they endured onboard the transport van were intolerable, invoking the Eighth Amendment's prohibition against cruel and unusual punishment. To establish a violation of the Eighth Amendment in the context of a challenge to conditions of confinement, an inmate must allege (1) a sufficiently serious deprivation under an objective standard and (2) that prison officials acted with "deliberate indifference" to the inmate's health and safety under a subjective standard. *Wilson v. Seiter*, 501 U.S. 294, 297-99 (1991). A sufficiently serious deprivation occurs when "a prison official's act or omission ... result[s] in the denial of the minimal civilized measure of life's necessities." *Id*. at 298. Accordingly, "[a] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. In the context of a conditions-of-confinement claim, to demonstrate that a deprivation is extreme enough to satisfy the objective component of an Eighth Amendment claim, a prisoner must "produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions," *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993), or demonstrate a substantial risk of such serious harm resulting from the prisoner's unwilling exposure to the

challenged conditions. *See Shakka v. Smith*, 71 F.3d 162 (4th Cir. 1995) (internal citations omitted).

The plaintiffs claim defendants Drew, Simmons, Major, and Anderson knowingly and maliciously deprived them of nutritious food while housed in the SHU (amended comp. ¶¶ 41-42, 70). However, defendants Drew, Major, and Anderson had no involvement in the planning, preparing, or providing of inmate meals to inmates at FCI Bennettsville (*see* Drew decl. ¶ 3; Major decl. ¶ 3; Anderson-Layne decl. ¶ 3). In addition, none of these defendants recall either plaintiff ever informing them personally of problems with their meals. Per the declaration of defendant Simmons, the meals provided to inmates in the SHU at FCI Bennettsville are the same as those provided to the general population, prepared from a national menu, and pre-approved by a dietician for proper nutrition (Simmons decl. ¶ 3). The plaintiffs have provided nothing other than their own conclusory, unsupported allegations that the meals provided to them were inadequate in size and nutrition. Moreover, the plaintiffs have provided no evidence of any adverse or harmful effect the alleged condition of the food caused to them personally. There is no evidence the plaintiffs sought medical treatment for starvation or malnourishment or any other health problem that could be associated with receiving inadequate portions of nutritious food. Accordingly, this claim lacks merit and should be dismissed. Likewise, the plaintiffs' allegations of being denied clean clothing and hygiene while in the SHU (amended comp. ¶ 42) are similarly lacking in evidentiary support. No prison or medical records have been supplied by the plaintiffs to verify these allegations or confirm any significant physical or emotional injury sustained as a result. As such, these claims cannot survive summary judgment.

Regarding the conditions of confinement while on the transport van, the plaintiffs have likewise failed to establish a constitutional case. Even if their complaints were true concerning the lack of access to a restroom, the plaintiffs do not deny that they were given hand-held portable urinals for use during the trip. The Constitution "does not mandate comfortable prisons," and only those deprivations denying "the minimal civilized

measure of life's necessities" are sufficiently grave to form the basis of an Eighth Amendment violation. *Rhodes v. Chapman*, 452 U.S. 337, 347-49 (1981). "A custodial restriction that places a limitation on a detainee accessing a toilet facility is a lawful incidental restraint and disability that comes with detention." *Harbison v. Brown*, No. 1:07cv204, 2010 WL 5441666, at * 5 (W.D.N.C. Nov. 23, 2010). *See also Qawi v. Howard*, C.A. No. 98-220-GMS, 2000 WL 1010281, at *3-4 (D. Del. Jul. 7, 2000) (confinement to a cell without access to a toilet for six hours and having to urinate into a drinking glass and breakfast bowl and defecate into a paper bag not an Eighth Amendment violation); *Whitted v. Lazerson*, 96 Civ. 2746, 1998 WL 259929, at *2 (S.D.N.Y. May 21, 1998) ("temporary deprivation of the right to use the toilet, in the absence of serious physical harm or a serious risk of contamination, simply does not rise to the level of an Eighth Amendment violation"). Moreover, the plaintiffs have presented no evidence of harm other than their own unsubstantiated claims of temporary discomfort from having to hold their urine, and certainly not the "significant physical or emotional injury" required under *Strickler.*

The plaintiffs likewise fail in their claim regarding exposure to secondhand cigarette smoke (or Environmental Tobacco Smoke or ETS). The Supreme Court has held that an inmate "states a cause of action under the Eighth Amendment by alleging that [defendants] have, with deliberate indifference, exposed him to levels of ETS that pose an unreasonable risk of serious damage to his future health." *Helling v. McKinney*, 509 U.S. 25, 35 (1993). In proving exposure to an unreasonably high level of ETS, this court has held that a plaintiff must provide more than unsupported conclusory allegations. *Campbell v. Powers*, C/A 4:08-1765-HFF-TER, 2009 WL 2777619, at *6 (D.S.C. Aug. 31, 2009) (Plaintiff's mere lay opinion and allegation that he was exposed to unreasonably high levels of ETS is not sufficient to avoid summary judgment); *Strozier v. Rushton*, C/A 6:05-2875-RBH, 2006 WL 1819941, at *6 (D.S.C. June 30, 2006) (The plaintiff makes only conclusory allegations and fails to allege any facts that would state a claim under *Helling*). The plaintiffs here have made no objective showing regarding the levels of ETS to which they were temporarily exposed and have presented no proof that they suffered, or will suffer,

11

resulting injury. As they cannot meet the objective prong of the *Helling* test, their claim necessarily fails.

### 3. Excessive Force

The plaintiffs allege that their restraints were too tight while onboard the van for their transfer to FCI-Estill and suggest the use of the black box (a device that fits over the handcuffs to prevent tampering and escape) was cruelly inappropriate. The Eighth Amendment prohibits the "unnecessary and wanton infliction of pain" on incarcerated individuals. *Whitley v. Albers*, 475 U.S. 312, 319 (1986). In an excessive force claim, such as those raised by the plaintiffs, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian,* 503 U.S. 1, 7 (1992). Although the plaintiffs are not required to show more than a *de minimis* injury to state a constitutional violation, "[t]he extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation." *Wilkins v. Gaddy*, 130 S. Ct. 1175, 1178 (2010) (per curiam) (quoting *Hudson*, 503 U.S. at 7). Painful handcuffing, without more, does not constitute excessive force. *Brown v. Gilmore*, 278 F.3d 362, 369 (4th Cir. 2002). "[A] standard procedure such as handcuffing would rarely constitute excessive force where the officers were justified…" *Id*.

The plaintiffs have not demonstrated that the force of handcuffing was applied maliciously and sadistically to cause harm, as required to state a constitutional violation. Rather a review of the allegations, even in a light most favorable to the plaintiffs, reveals that the force was applied in a good-faith effort to maintain discipline during the inmate transfer. Defendant Del Re determined the level of restraints to be used during the transfer, and believed it prudent to use the black box as a precautionary measure in light of the circumstances of the transfer (Del Re decl. ¶ 11). Given the plaintiffs' involvement in the July 2008 uprising, this security tactic was justified. There is no evidence that the plaintiffs were kept in restraints for longer than necessary to complete the transfer or that they were put in restraints punitively. Contrary to the plaintiffs' allegations, there is no evidence, other

than their own conclusory statements, that they suffered any serious physical harm as a result of the restraints. Plaintiff Schulze merely stated his wrists were tender at the end of the transport trip (Lathrop decl., att. E), and plaintiff Gonzalez made no complaint at all (*id*., att. F). At a follow up medical examination, Schultz is attributed as stating to the medical staff, "I am fine now, I was only telling you what happed [sic] about four months ago" (*id*., att. G). Given the total absence of requisite proof to satisfy an excessive force claim here, dismissal is appropriate.

*Due Process*

As earlier noted, the defendants stipulate that plaintiff Schulze has exhausted his administrative remedies for the claims raised in his complaint, and this court has addressed above the merits of those preserved claims. Still, Schulze alleges that in challenging his disciplinary hearing, his administrative appellate documents were mishandled or improperly delayed by the BOP, and therefore he was "procedurally barred from federal court in seeking to have 47 days of good time credit taken from him as a result of the procedural and due process violations that occurred during the disciplinary process" (amended comp. ¶ 39). However, in his complaint, Schulze attributed the "procedural and due process errors" at his disciplinary hearing to defendant Comstock, and he has since moved to dismiss Comstock from the case (*see* amended comp. ¶¶ 27-30; m. to amend, doc. 60). Accordingly, should the District Court grant this motion, these claims against defendant Comstock would be moot.

As for Schulze's contentions that delays in the BOP's administrative appellate process barred his case from judicial review in a separate action under 28 U.S.C. § 2241 (amended comp. ¶¶ 38-39), he has failed to make any such showing. The United States Constitution guarantees prisoners the right of meaningful access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). In *Lewis v. Casey*, 518 U.S. 343, 349 (1996), the Supreme Court held that a prisoner must show some actual injury resulting from a denial of access in order to allege a constitutional violation. This requirement can be satisfied by demonstrating that a non-frivolous legal claim was frustrated or impeded by some actual

deprivation of access. *Id.* at 352-53. Schulze presents this court with nothing to demonstrate that he even attempted judicial review under § 2241, or that such an attempt was rejected after his administrative efforts were allegedly thwarted. Had he made such an attempt, the receiving court may very well have considered the case in light of any legitimate allegations of impediment by BOP staff amounting to cause and prejudice. *See Engle v. U.S.*, No. 00-6659, 2001 WL 1356205, at *2 (6th Cir. Oct. 25, 2001) (cause for failure to exhaust may be established by official interference with a prisoner's ability to complete the administrative process). Moreover, this court cannot make a determination on the merits of the plaintiff's purported § 2241 claim, as that case is not now before the court. Accordingly, Schulze's due process claims fail here.

### *Respondeat Superior*

To the extent the plaintiffs allege Warden Drew acted in a supervisory capacity to deny them their constitutional rights, these claims fail. The doctrine of respondeat superior, or supervisory liability, does not apply to *Bivens* actions. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Merely being in a position of authority, without more, is not enough to establish a *Bivens* claim. *See Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001). "Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal,* 556 U.S. at 676. The plaintiff must establish three elements to hold a supervisor liable for a constitutional injury inflicted by a subordinate: (1) the supervisor had actual or constructive knowledge that a subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to people like the plaintiff; (2) the supervisor's response was so inadequate as to constitute deliberate indifference or tacit authorization of the subordinate's conduct; and (3) there is an "affirmative causal link" between the supervisor's inaction and the plaintiff's constitutional injury. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

The plaintiffs have not provided any evidence that Warden Drew was personally involved in any action that violated their constitutional rights. Furthermore, the

plaintiffs have not provided any evidence that defendant Drew tacitly authorized or has been indifferent to an alleged violation of their constitutional rights. Thus, supervisory liability does not attach to her, and defendant Drew is entitled to dismissal from this case.

## **CONCLUSION AND RECOMMENDATION**

Based upon the foregoing, it is recommended that the defendants' motion to for summary judgment (doc. 62) and the plaintiff's motion to amend/correct (doc. 60) be granted.

                                                            s/ Kevin F. McDonald
                                                            United States Magistrate Judge

August 8, 2012
Greenville, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
300 East Washington St, Room 239
Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984.